No. 3017.

### Henry Clark v. The State.

1. Theft—Ownership—Indictment.—Proof that M was a joint owner and possessor with others of the stolen property will support the allegation of the indictment which laid the ownership and possession in him only. See the statement of the case for a charge of the court on the issues of ownership and possession *held* correct and sufficient.

2. Same—Evidence—Fact Case.—See the statement of the case for evidence *held* insufficient to support a felony conviction for theft, because only two of the several alleged stolen articles were identified· among those found in the possession of the defendant, and the aggregate value of those two did not amount to twenty dollars.

Appeal from the District Court of Smith. Tried below before the Hon. F. J. McCord.

This conviction was for felony theft, and the penalty assessed by the verdict was a term of two years in the penitentiary.

Orville Murphy was the first witness for the State. He testified that he was the son of Arch Murphy, deceased, who had been dead about two years and a half, and was the brother of Arch Murphy, Jr., deceased, who had been dead about five months. Witness's father, at the time of his death, was the proprietor of a jewelry store in Tyler, Smith county, Texas. Upon the death of his father Arch Murphy, Jr., succeeded to the management of the business, and until his death conducted it for the heirs. Arch Murphy, Jr., owned one-third of the jewelry establishment, and the witness and his brother and sisters the remaining two-thirds. The witness became the clerk of his brother when the latter assumed the management

of the business, and served him in that capacity until his death. It was a part of witness's duty to open the store early in the morning, and superintend the sweeping and cleaning out of the same by the defendant, who was in the employ of the store—the witness's said brother Arch never reaching the store until after breakfast, and after the sweeping of the same. On or about February 10, 1888, at which time the store and jewelry were in the custody and possession of the witness, the witness missed several articles of jewelry from the stock, including five pairs of cuff buttons, of the value of two dollars per pair, three gold finger rings, of the value of three dollars each, one gold finger ring of the value of eight dollars, one watch of the value of ten dollars, and several other articles of jewelry. The watch and the finger ring of the value of eight dollars, now exhibited to the witness, were two of the identical articles which disappeared from the store at the time stated. The said articles were recovered by Deputy Sheriff McCullers. The articles described, and other articles not mentioned in the indictment, were taken from the possession of the witness without his knowledge or consent.

Deputy Sheriff McCullers testified, for the State, that the finger ring and watch exhibited in evidence were the articles which he recovered from the house of Maria Scott, where the defendant lived, and where he was arrested. The ring and the watch were found on a joist in Maria Scott's house, wrapped in a rag. Alston was with witness when he recovered the said articles and arrested the defendant. Orville Murphy told the witness of the theft of the jewelry, and identified the ring and watch after they were recovered. Mr. Alston corroborated the testimony of McCullers.

Maria Scott testified, for the State, that the ring and watch taken from her house by McCullers and Alston, and a quantity of other jewelry, were brought to her house by the defendant about a week before he was arrested. He gave the ring to one of witness's daughters, a breast pin and ring to another of her daughters, other jewelry to witness's mother and sister, and a necklace and a breast pin to witness. He said he got the watch from John Stone. The said John Stone testified that he had never let the defendant have the watch in evidence, nor any other watch.

The State closed.

The testimony for the defense went merely to show that

Orville Murphy was a joint owner with others of the alleged stolen property.

The charges of the court on the issues of ownership and possession referred to in the first head note of this report read as follows: "It is not necessary, in order to constitute theft, that the possession and ownership of the property be in the same person at the time of the taking.

"The possession of the person so unlawfully deprived of property is constituted by the exercise of actual care, control or management of the property, whether the same be lawful or not.

"When one person owns the property and another person has the possession, charge or control of the same, the ownership may be alleged to be in either. When property is owned in common or jointly by two or more persons, the ownership may be alleged to be in either or all of them.

"When property belongs to the estate of a deceased person, the ownership may be alleged to be in the executor, administrator or heirs of such deceased person, or in any one of such heirs.

"Applying, then, the testimony of the witnesses to the law of this case, if you find that defendant, in the county of Smith, about the time mentioned in the indictment, did fraudulently take, steal and carry away from and out of the possession of Orville Murphy, property to him belonging as described in the bill of indictment, without his consent, with intent to deprive the owner of the value of said property, and to appropriate the same to his own use and benefit; and you further find that same property was so appropriated by the defendant; and you further find that the property was of the value of twenty dollars and over, you will find the defendant guilty of theft of property of the value of twenty dollars or over, and assess his punishment at confinement in the penitentiary not less than two nor more than ten years.

"In this case, if the witness Orville Murphy had an interest as an heir in the property taken, and in the jewelry store carried on by Arch Murphy, deceased, such relation would support the allegation in the indictment that the property belonged to the said Orville Murphy; and if the said Orville Murphy was an heir of said A. M. Murphy, and had an interest in his estate, and stayed in said store, and had an equal right to go and come with his brother, Arch Murphy, and a special interest in the

entire property, these facts would support the allegation that the property was taken from his possession."

*J. F. Onion*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE.  In the indictment the ownership and possession of the property are alleged in Orville Murphy.  These allegations were sustained by the evidence, which shows that said Murphy, at the time of the theft, was a joint owner and possessor with others of the property.  (Code Crim. Proc., art. 426; Crockett v. The State, 5 Texas Ct. App., 526; Henry v. The State, 45 Texas, 84.)  Upon the issues of ownership and possession the court instructed the jury fully and correctly, and properly refused the special instruction requested by defendant's counsel.

Theft of several articles of jewelry is charged in the indictment, the value of each article being separately alleged, the aggregate value amounting to more than twenty dollars.  Several articles of jewelry were traced to the possession of the defendant, but, of the number of articles so traced to him, only two were identified by the owner in his testimony as articles which belonged to and had been missed by him.  These were a watch, alleged in the indictment to be of the value of eight dollars, and a finger ring, alleged to be of the value of eight dollars.  Some of the articles of jewelry found in the defendant's possession were not articles mentioned in the indictment.  The watch and finger ring identified by Murphy as his property were proved to be of the value alleged in the indictment, but there is no proof of the value of any of the other articles of jewelry found in defendant's possession, or that any of said other articles were the property of Murphy.

We are of the opinion, therefore, that the evidence does not support a conviction for a felony, and the judgment is reversed and the cause is remanded.

*Reversed and remanded.*